The opinion, of the court was delivered by
Tilghman, C. J.
The only question of any difficulty in this case is, whether the legacy of ¿01000, given by the will of Christian Febiger to his wife, vested in her absolutely; or whether she had only a power of appointment, which not being executed, her representatives are not entitled to it.
The testator first gives to his wife all his estate, real and personal, during her life, arid then says, that if she should marry again, she should continue to enjoy the possession and income of his estate, but neither she nor her husband should have power to sell or dispose of any part of it, but the whole should be kept entire until her death, for fhe uses afterwards mentioned; but that if he should die possessed of any property conveyed to him by his wife, as heiress of her father, William Carson, it ■ was not to be considered as his property, “ but remain unto her, and at her sole disposal, at which also should be all his household furniture, family utensils, horses, carriages, plate, plated ware, fyc. ” Then comes the following clause: “■hind I do further give and bequeath unto her, to be disposed of at her death, ¿01000, • to be raised out of my property in such manner as she shall direct, giving preference to the sah of personal estate.” He afterwards gives to his adopted son Christian■ Febiger Carson, (on condition that he changed his name to Christian Carson Febiger,) after the death of his wife all his estate, real and personal, excepting the above sum of ¿§1000, and what should be afterwards excepted. The law is well settled, that if there be a bequest of a sum of money to a person to be disposed of at his death as he pleases, it vests in the legatee, and shall go to his representatives, though he makes no appointment or disposition of it, by will or otherwise. But if it be given for life, with power to dispose of it at his death, it does not vest absolutely, and shall not go to the representatives of the legatee, unless some disposition be positively made of it. ' It is rather a nice distinction, but so firmly established, that I d,o not think myself at liberty to depart from it. Indeed, although it be a nice distinction it cannot be said to be void of reason, for when a tester gives a thing expressly for life, and adds a power to dispose of it after death, we have his own word that he meant something different from an absolute gift. The cases in support of it may be found in 2 Roper on Legacies, 352. Now, in the will of Christian Febiger, there are several strong circumstances to show, that he did not mean this legacy of ¿01000 to vest in his wife absolute- *19 ]y. In the first place he gives her all his estate, (with certain exceptions,) for Ufe expressly. In the next place, it appears that where he meant to give absolutely, he knew how to express his intention — he places his houshold furniture, plate, &c. at the sole disposal of his wife. But as to the rest of his estate, he took care to provide, that in case of her' second marriage, it should be kept entire until her death, without power to her or her husband, to sell or transfer any part of it. And it is to be remarked, that the bequest of the absolute property in the houshold furniture, &e. is im-. 'mediately succeeded by this power to his wife, to dispose of ¿61000 at her death; so that it is difficult tq account for the change of language without supposing a difference' of intent. But the strongest circumstance of all is, that this sum of a ¿61000 was to be raised out of his estate in such manner as his wife should direct, giving preference to the sale of his personal estate. It appears by the latter part of the will, that the testator was doubtful, whether his personal estate would be sufficient “to pay his debts; and in that case it would be important, and even necessary, that his wife should designate the part of the real estate from which the ¿61000 sbould be raised. Besides, in case of a second marriage, if the legacy was vested, it would go to the husband, a thing which there is no reason, to suppos’e Mr. Febiger intended. After the liberality with which the testator had treated his wife, in giving her his whole estate for life, he might think it sufficient to give her the option of drawing ¿61000 more., by placing it within her power, a.nd leaving her to the exercise of her own will. The only thing which has raised a doubt in my mind is, the devise of the residue to his adopted son, in which the ¿61000 are expressly excepted. But upon reflection,. I think, the fair construction is, that the exception was, of the interest in the ¿61000, such as it was,ivhich had been given to Mrs. Febiger. The probability was, that she would exercise her power of disposition, and therefore, the expression might naturally be, “ except the above ¿61000,” without intending to convert her pbwer of disposition into a vested legacy. I am of opinion, therefore, that the Orphans’ Court erred, in the construction of Febiger’s will, so far as concerned this sum of ¿61000. His wife did not execute her power, and therefore, her representatives are not entitled to it. In all other respects, I think the decree was right.. • .
‘Gibson, J.
In general, the bequest of a legacy to be at the disposal of the legatee, is a bequest of the absolute interest; but a powder of disposition at death, engrafted on an express limitation for the life of the legatee, will not enlarge his interest by implication, against the express intention of the testator, as is sometimes done with respect to a devise of lands, to effect the general intent of the devisor, where it would otherwise be prevented from taking effect by the inflexible nature of the rules of descent. Now, what is *20 the case here ? To bring into view the particular parts of the will on which I found my opinion, it is necessary to state them in connexion with the others: which I shall do as briefly, and as nearly in the words of the testator as possible.
He sets out with a bequest of “ all his estate,” to his wife, “ during her natural life;” and charges it with the maintenance of a favourite nephew, who is the principal object of his bounty: and he declares, that neither she nor her husband, in case she shall marry, shall “ part with, sell, grant, or convey the whole, or any part of it,” as the whole is to be kept entire till her death, for objects and ■uses subsequently to be declared. He then directs, that if he should die possessed of any property conveyed to him by his wife, which came to her from her father, it “ should not be considered as his property, hut remain to her and be at her disposal;” as were also to' be his “ household furniture, family utensils, horses and carriages, plate, plated ware, &c.;” and.then comes the bequest in question: “And I do further bequeath to her to be disposed of at her death, £1000, to be raised out of my property in such manner as she shall direct, giving preference to the sale of personal estate.” After this, he devises to his favourite nephew “ all his estate” at the death of his wife, “ real and personal, excepting the above £1000,” and what he might afterwards bequeath to others, on condition that he assume the testator’s name. Finally, after devises of land to three other nephews, and a few inconsiderable bequests to particular friends, he devises to his brothers and sisters in Denmark, all that he had before given to his favourite nephew, in the event of his dying without issue, or refusing to adopt the testator’s name. This is all that I think material to the construction of the clause on. which the question arises.
This is a question'bf intention, and I concede, that if the testator intended to pass this £1000 by the general bequest of all his estate, it would be subject to the limitation for life, with which that bequest is qualified; and consequently, that the words enabling the wife to dispose of it at her death, would give her nothing more than a power of appointment. If, however, he intended it should pass by the particular bequest which he has made of it, such particular bequest will operate by way of exception, and will not be subject to the restriction with which the general bequest is qualified: and that he did so intend, it is my object to show.
The first thing that strikes us is, that if he meant to give his wife only a power over this legacy at her death, it is strange that he should have superadded special words of bequest as peculiarly applicable to this part of the proyision which had already been made for her in general terms. Why give over again what had been sufficiently given before? “I do further bequeath to be disposed of at her death, &c.” He would naturally have said: with respect to a £1000, part of .my estate, before bequeathed to my *21 wife, I give her power to dispose of it at her death. But the very circumstance of passing this part of the estate anew, indicates an intention that it should pass on terms entirely new. This is certainly the rule of construction which governs in questions arising 'from repetition, in the same will, of legacies of unequal amount, or. which'differ in respect of being contingent; but where the second is given by a codicil, it is immaterial whether they differ in circumstances or not: each will prima facie be considered a distinct gift. This rule is fairly deduciblo from all the cases; and is now considered as established.. Now, a legacy of a ¿61000 is a very different thing from the devise of a man’s whole estate, both real and personal; and the repetition of words of bequest in regard lo a part of it, is, I apprehend, sufficient to warrant a conclusion, that the testator intended to distinguish it, in all respects, from the bulk of his property given before.
But this construction is strengthened by other parts of the will. He expressly declares, that whatever had been a' part of his wife’s patrimonial estate, although conveyed-by her to him, as well as his coaches, horses, furniture and plate, should not be considered as his property at all, but (iremainto her, andbe at her disposal?3 and with respect to these, no one will pretend that she had a naked power of appointment beyond-an interest for her life. How then can'this be reconciled to the opinion-of their having passed by the general bequest? If they did so pass, they must necessarily have passed subject to the qualification of her general interest, which was expressly limited to the duration of her natural life : but sueh construction would be incompatible with the declared intention of the testator. Iieje then is an express restriction of the generality of the words “all my estate;” and if the testator meant to restrict it in respect of one part of his estate, why are we tó intend that he did not mean to restrict it in respect of another ? It is worthy of remark also, that this bequest is mentioned in immediate connexion with that which has given rise to the question under discussion. “And I do further bequeath to be disposed of at her death, &e.” Now, there is not even a circumstance to give colour to an argument, that the testator intended the- one to be an exception to the general bequest more than the other; and on this ground I should hold, that this legacy was not considered by him as having been given before.
If to the bequest of all his estate, the testator had added a particular bequest of this legacy, without saying more, the latter might by analogy to the rule of construction, established in regard to the repetition of legacies, have been conclusively shown to be á distinct substantive clause, the effect of which could not be qualified by any thing that preceded it. Every clause, and indeed every word in a will shall have effect, if by any construction it can; and •here the bequest of this particular legacy would have been nugatory *22 if it had been bequeathed before. But it may be demanded, what could have been the object of the testator in adding to a-simple bequest of this particular legacy, the words “to be disposed of at her death. ” It was obviously to distinguish it from the bulk of his estate, which had been given to her expressly during her life, .and subject to absolute restriction of every thing like a power of disposal over it; and to intimate that she should be at liberty to dispose of this ¿01000 at her death. It was to exclude all inference from what had been said before, that this legacy, like the bulk of the estate, had been bequeathed to her only for life. The power of disposal, therefore, was intended to cany the whole interest. But what was the object of the restriction in the general bequest? It was, as he has expressly said, to have the estate kept entire till her death, to answer certain purposes which he was just going to declare. That is, it was to be bequeathed over. ■ But there is no bequest over of this particular legacy in the event of her neglect to dispose of it. On the contrary, it is expressly excepted in the devise or bequest of the mass of his estate, to his adopted son, and is nowhere afterwards mentioned This shows, that by the words u all my estate,” and “ the whole,” he meant only the bulk of the estate; for the object of the restriction would be answered by keeping entire till her death, such parts of it as might be sufficient to satisfy the subsequent provisions of the will: and beside, if he did not intend that his wife should have this legacy absolutely, it is not a little strange that he should not have devised it over in the event of her neglect, or refusal to dispose of it: for we find that he was careful to provide for "the happening of contingencies which might effect other provisions of the will: such 5s the contingency of his adopted son .dying without issue, or refusing to take his name.
But it certainly was not his intention to die intestate as to any part of his estate. His brothers and sisters in Denmark, between whom and himself he declares, there was no tie save that of blood, were the most remote objects of his concern, and were to take only in case of failure on the part of those who were nearer to his affection. Yet if his wife'is not to be considered as having taken this legacy absolutely, he is necessarily dead intestate as to it, and it goes to them under the statute of distribution. I cannot see how this conclusion is to be evaded by any implication against the express declaration of the testator. Now, the objeót of the restriction as to the mass of his estate being to enable him to give it to his adopted son at his wife’s death, would he not, if this particular legacy had been considered as a part of that mass, and subject to the restriction, have bequeathed it to his adopted son in case of his wife’s refusal to execute the power, rather than have expressly excluded it from the bequest to him, that it might go to the more remote objects of his bounty ?
*23 The objection, that this legacy is gone for want of Mrs. Febiger’s direction as to the manner in which it should be raised, rests upon other grounds, and cannot' be called in aid of the supposed operation of the limitation to her for life, of the rest of the estate; and in that view, is without force. Take the case of a legacy conceded to be given absolutely,- biit coupled with a declaration, that the legatee should direct the manner in which it should be raised: would a chancellor suffer it to fail for want of such direction? Undoubtedly not. Such direction is not in the nature of a condition; and in decreeing the legacy, he would also direct'the manner in which it should be raised. In this state, where we'have no chancellor, the matter would, I apprehend,.'be left to the discretion of the executor. For these reasons, I am of opinion, that the appellant be charged with the amount of this legacy as a part of the estate of Mrs. Febiger, which it was his duty to recover from the person in whose hands it might have been found. On the other questions in the cause, it is necessarjr only to say, that I concur in the opinion already expressed.
Duncan, J.
So far as respects the sum of £ 1000, depending on the construction of the will of Christian Febiger, I am of opinion the decree was erroneous. If this £ 1000 was property of Mrs. Febiger transmitted to her representatives, it would be assets in their hands, for it ought to have been in their hands as part of his effects, as personal assets distributable to her next of kin. My opinion is that it was not property devised to her by Christian Febiger, but a power on her death to raise £ 1000, and dispose of it as she pleased, directing the fund out. of which it was to be raised, preferring his personal estate. It is simply a question of intention to be drawn from this will, from the four corners of which it is unnecessary to travel. By referring to the wills of other men, we could not throw any, or if any, but a faint light on'the construction of this will. Whenever we enter into verbal criticism in construinga will, we will often defeat the real intention. Nice discrimination may detroy; common sense is the best guide to discover intention. (Here his honor read the first and second clauses of the will.) The income of all is given her for life, to be kept entire until her death; nothing to be parted with except the carnage and horses, and her patrimonial property, which are always to be at her disposal. All the authorities from Leonard down to Jackson v. Robinson, 16 Johns. 537, agree in this, that a devise for life, with power to dispose of the thing'at his death, is but an. estate for life, and if the devisee or legatee does not dispose of it, it goes, where there is no devise over, to the heir or next of kin of the testator, according to the nature' of the property; but if given to one generally, with a general power to dispose at his death, then he takes it as property absolutely; but aliler where the power is restricted or something is to be done by the legatee or devisee; as directions to be given as to *24 the fund out of which it is to be raised, or the manner of raising it. It is power, and but an estate for life where the power is not executed. The distinction between power and property is a marked one. It is manifest the testator never intended his wife absolute property in any thing but her patrimonial property, the carriage, horses, and furniture; neither she nor any future husband could use this £ 1000; could not part with it; it would not pass to assignees under the insolvent law; it could not be seized for her debts; it coüld not be forfeited for her crimes; it would not escheat if she left no next of kin; if hor husband survived, it would not pass to him; he could not alien or devise it, nor would it be transmissi’ble to his next of kin. If it be a property, it is a new species, unknown to the civil law, the common law, and the statute law; there is no medium, it must be, if it goes to her next of kin, because it is absolute property in her. There can be no distribution of personal property to representatives, more than descent to heirs, unless the person from whom the representatives claimed it, had the absolute property; it is the very definition of property, that it gives the jus fruendi ctv'nlendi, Itis quite clearthatthe testator never contemplated the next 'of kin of his wife as beneficiaries under his will, although the £ 1000 is excepted out of the residuary bequest; and why if it is an estate not provided for by the testator, his next of kin should be excluded to make room for heris, I am not able to see) Why should they got it if it ivas not given to their propositus, on what principle unless by or through her, is to me incomprehensible: This is not a specific £ 1000, separated from the bulk of his estate. It could have no existence in her life time; it was no legacy vested in her, where the lime of payment was postponed; it depended on her direction whether after her death it was to be raised, and how it was to be raised, what part of his personal estate was to be sold to raise it. What action could be sustained by her administrators against his administrator with the will annexed, what kind of declaration could be framed, when would the cause of action accrue? As property it had no distinguishable existence, no actual value to her beyond her life interest. Property without tiie power of use and disposition is an empty sound. Had Mr. Febiger an absolute proprietary interest? It will be difficult to support this. 11 was uot a legacy vested; debitum in presentí solvendum in futuro. By our laws there can be no special right or particular privilege whatever of perpetual duration, but such as have relation to some kind of inheritance, nothing but that can support a perpetual subsisting right. All personal property is susceptible of no collateral right, though it is of a special particular interest, as the use for life, which is the case here. It is a maxim of our law, that no man by any device can create a new consequence out of property. The consequence here would be entirely, new, that of property transmissible, which never was in the person from whom it was *25 'transmitted. If the £ 1000 was intended as an absolute gift, why not give it as he. did the carriage, &e. It would then have been in-' sensible to say she might dispose of it at her death, directing the manner in which, it was to be raised.-1 question whether any other than a testamentary disposition was intended. The plan of the testator was to attract the respect of friends to her during all her life, and until the moment of her death, by enablingher to reward those who were attentive to her during all.that time. He had given her a large independent income during her life, she never could come to wartt, but she might have little to leave at her death. To put it in her power to reward those who merited rewards for their kindness, he left to her the discretion of raising if she thought fit £ lOOCf, out of such of his personal estate as she might direct. This would fall naturally within the scope of testamentary intention, and would be as acceptable and more beneficial to her, than an absolute gift. There was in her a limited particular interest in the whole estate during her life, and the power to dispose of it was quite distinct from this interest, (the only exception is the property coming from her father, the carriage, &c.) and where this power and interest concur, though the latter might amount to an absolute gift, standing alone, yet where there is this concurrence the gift is always held to be a limited interest. The interest-here is particular, partial, limited a temporary use of the fruit, ^ keeping the tree entire until her death, with a power to dispose of the tree itself, or directing to whom the fruit should go at her death. If the power was a general one, requiring no exercise of discretion by the legatee, as to the mode of raising this sum, still it would be but the use of the whole estate for her life. But where the interest is limited and- temporary, and a power vested to enlarge it by the exercise of a discretion, which is at the option of the legatee, who never thinks proper to use it, or give any direction about it, that this is the same thing as if she had executed it, and directed it to be raised, and from what source, and paid over to the present claimants, in the proportions claimedby them, is a view of this will very different from any I have been able to take. If this testator had been asked, what if your widow does not choose to raise it, shall it be raised and divided among her next of kin? Does any one think he would have answered, that this is my intention? Such -intention is opposed to every movement of the heart of man, to every impulse which governs his affections and acts.. To suppose thatthis husband having no children to provide for, adopting Christian Febiger Carson ashis child, should deny to his wife the controul (while he granted her the use of all) of any part of his estate, and yet should extend it to her next of kin, whoever they might be, unknown to him, unborn, as his beneficiaries, and that they should take it in exclusion of his next of kin, merely because they were her next of kin, is an unnatural presumption. What motive, inducement or reason can be assigned for this *26 most strange and unaccountable disposition. If these claimants take, they have a legal title, which could be enforced in a court of law. If they have, what is the remedy and against whom? If Mrs. Febiger had no right in her life time, (and her right was a posthumous one, for living she had none;) the remedy would be a personal one against the administrator with the will annexed of Christian Febiger. It would puzzle the ingenuity of the most learned to give us a form of' action, and a declaration to meet it. But if they could, then the appellant has no concern with it, he could bring no action, and he is therefore not responsible. And if they could not, I inquire with a desire to be informed how, that could be assets in the hands of her administrator, that has no essential of property in her, for she could not part with it, it would not go to any future husband, is not subject to her debts, was of no value to her in her life time. If this is disposed of Christian Febiger Carson takes; if it. is not, the next of kin of the testator. The exception of the £1000 from the residuary devisé, is only in case, she should direct itto be raised. This does not amount to a bequest, it does not enlarge the estate for life expressly given to her; it does not enable her to raise it in her life time; to part with it; it has not distinguishable existence; it is that which she uses as part of his general estate; it is that which she can not part with; cannot raise to take effect while she lives, it is to be a post mortem, disposition. The carriage, horses, and furniture are at her sole disposal, she may do with them what she pleases, she has plenary pow er over them. Why if the testator intended the £ 1000 to be at her sole disposal, this alteration of phraseology, unless his intention was different? Why, if she was to have it presently, postpone the enjoyment of it during her life? Why not say at once, I give her £1000, besides the carriage, horses, and furniture, her patrimonial property, to beraised immediately out of my personal estate? Because he never so intended it. If he has not given it to his wife as absolute property, the present claimants are not entitled; if he has not given it to. them aspersorio; descriptse, they cannot take; they cannot but by devolution in the first instance, they cannot take per formam doni in the latter, for it was not given to her. Who is entitled to the £ 1000, or whether it is to be raised at all, it will be time enough to decide when the parties are before the court. At present all we have to determine is, whether the present claimants can make the administrator of Mrs. Febiger account to them for this as her personal property. My opinion is that they cannot, and that the decree is erroneous, and should be reversed for this, but that is should stand as to all other matters affirmed.
Decree of the Orphans’ Court affirmed as to the first and second exceptions, and reversed as to the third.