[Philadelphia, January, 15, 1829.]

THOMAS *against* THOMAS, surviving Executor of THOMAS.

Testator directed his real estate to be sold by his executors, and that when sold and the money collected, they should pay all his just debts and all the just debts of his son L.; contracted up to the date of the will, but none that he might contract after that date. He then directed that his wife should have and enjoy all his estate, real and personal, during her life, and that at her death, one moiety should be left at her own disposal. The other moiety he directed to be put out at interest for the use and benefit of his son L., for him to receive the interest of the same annually during his natural life; and at his decease, the principal and interest of the same, to be at his own disposal. The wife survived the testator and died intestate. The son L. survived his father and mother, and died intestate, leaving the plaintiff his only child. *Held,* that after the death of the widow, without appointment, one half of the estate vested absolutely in the son L. as next of kin, and was liable to his debts; and that as to the other half, it went to the son L. for life, and after his death, without appointment, to the plaintiff as next of kin of the testator, and was not liable to the debts of the testator's son L.

On the trial of this cause at *Nisi Prius,* a verdict was rendered for the plaintiff, for three hundred and eighty-nine dollars sixty-four cents, subject to the opinion of the court upon his right to recover, upon the whole evidence; from which it appeared that *Nathan Thomas,* the defendant's testator, departed this life having made his last

(Thomas *v.* Thomas, surviving Executor of Thomas.)

will and testament bearing date the 3d of *November*, 1804, wherein he devised as follows:—

*First.* "My will is, that the plantation and tract of land which I now possess in the township of *Blockley*, and county aforesaid, with the appurtenances thereunto belonging, be sold two years after my decease, or at any time within the said term, if my executors shall conceive it most advisable for the benefit of the same, and when sold and the money collected, my will is that all my just debts be paid, and also all the just debts of my son *Lewis Thomas*, which he may have contracted until the date of this my will, but none that he may contract after this date. My will further is, that my beloved wife *Sarah Thomas*, shall have and enjoy all and singular my monies, goods, chattels, rights, credits, effects, and all my estate, real, personal, and mixed, whatsoever and wheresoever, during her natural life, and at the decease of my said wife, the one moiety or half part of the said estate which may be left at her own disposal; and the other moiety or half part of the said estate, to be put out to interest for the use and benefit of my son *Lewis*, and for him to receive the interest of the same annually during his natural life, and, at his decease, the principal and interest of the same to be at his own disposal. And, lastly, I do hereby nominate and appoint my beloved wife *Sarah Thomas*, executrix, and my beloved friend *Thomas Thomas*, to be my executor of this my last will and testament, hereby revoking," &c.

*Sarah Thomas* survived the testator, and died intestate. *Lewis Thomas* survived his father and mother and died intestate, leaving the plaintiff his only child.

The defendant, who was sued as surviving executor of *Nathan Thomas*, also administered to the estate of *Lewis Thomas*, on the 19th of *September*, 1827. This action was brought by the plaintiff to recover the balance of the estate of his grandfather, according to the account filed by the defendant, as executor of that estate.

The defendant contested the plaintiff's right to recover, in behalf of the creditors of *Lewis Thomas*.

*Chew*, for the plaintiff, cited *Flintham's Appeal*, 11 *Serg. & Rawle*, 16, and contended, that it was clear, upon the intention of the testator, that *Lewis Thomas*, as to the moiety bequeathed in trust for him, had an equitable estate for life, with a power to appoint the reversion, which went to the next of kin of the testator at the time of his death, excluding *Lewis*, in default of appointment.

*Binney*, for the defendant.—The plaintiff, to support his action, must claim as next of kin to his grandfather, *Nathan Thomas*. If his title is as next of kin to his father, he must bring suit against the defendant as administrator of his father, and the debts of the father must then be paid. It is to avoid this payment, that the suit is brought against the executor of the grandfather.

The testator's will gives the whole of his estate to his wife for life, with a power of disposing, at her death, of a moiety, which

(Thomas *v.* Thomas, surviving Executor of Thomas.)

power was never exercised. · After her death, he directs the other moiety to be placed at interest for the use of his son *Lewis*, and leaves him the power of disposing, at his death, of both principal and interest. This power also was never exercised. It is, consequently, the case of a limitation of estate,· real and personal, to A. for life, with a power of appointment over a moiety in fee or absolutely, to take effect at the death of A., and after A's. death, a further limitation of a moiety in trust for the use of B. for life, with a like power of appointment to B..over that moiety; *both the devisees* having failed to execute the power.

The mother having died in the life of ·the son, and the testator having omitted to make any provision for her failure to appoint .the moiety placed at her disposition,—it follows, that at the mother's death, at the latest, the title to the reversion of the one moiety became vested in some one; and no person could have any pretension to it at that time, but the testator's son *Lewis Thomas*, who was both then and at the testator's. death, his heir, and only next of kin. As to that moiety consequently the plaintiff, the grandson, can have no title.

The same *is* true of the. other moiety; for the principle on which *Lewis Thomas* took the first moiety rules the other;· namely, that a power of appointment or disposition, does not prevent the undisposed of estate from vesting somewhere in the meantime; that it vests in like manner as if the power was not created, either in the devisee over, or, if there be none, in the heir or·executor, as trustee for the next of kin at the testator's death; and, consequently, that as *Lewis Thomas*, at the death of the testator, his father, became entitled as heir or next of kin, to the reversion of one moiety of the estate after his mother's death, subject to her power of appointment, so he became entitled *at the same time*, to the reversion of the other moiety after the expiration of his equitable estate for life, subject to his own power of appointment.

This is a consequence·of the nature of a power of appointment. *Sugden on Powers*, 148. *Cunningham* v. *Moody*,.1 *Vez.* 174. *Doe* v. *Martin*, 4 *D. & E.*.39. The estates limited over in default of appointment, are vested, as well in the case of personalty as of realty. *Sugden on Powers*, 151. *Coleman* v. *Seymour*, 1 *Ves.* 209. *Gordon* v. *Levi*, *Amb.* 364. *Reade* v. *Reade*, 5 *Ves. jr.*, 748. ·

The son, *Lewis Thomas*, consequently, had the reversion of the moiety in himself, by his title as next of kin to the father, the testator having made no disposition of it; and, on his death, without disposing of it, his administrator took it upon the usual trusts of that office.

The objections to this argument are to be noticed.

1. It may be said that the testator's intention was that the son should have no more than what he expressly gave him,—an estate for life in a moiety. The answer is, that the testator has not given

(Thomas *v.* Thomas, surviving Executor of Thomas.)

the rest, residue, or remainder, to any one, and consequently, the law casts it on the son, either as heir or next of kin. If he meant to make a different disposition of it, *quod voluit non dixit.* The court cannot make a will for him. The son takes his own equitable estate for life, by express devise; the undevised residue, by his relation to the testator. If the testator did not mean he should have it, he has not shown who else should have it, and that is enough to cast it on the son. If he had expressly said that his son should not have it, still the law would have cast the realty on him, as heir, and if he could not have made title to the personalty as next of kin, the executor would have kept it for his own use.

2. It may also be said, that this interpretation exposes the estate to the payment of the debts of *Lewis,* contrary to the express declaration of the testator. To this it is answered, that there is no such declaration in the will, as that *Lewis's* debts should not be paid out of *Lewis's* estate; but only that the testator's estate should not pay any of *Lewis's* debts after the date of the will. The testator meant to secure all to the wife for life; after paying certain debts: after her death, the interest of the moiety devised to the use of *Lewis* for life, was liable for his debts, there being no provision to the contrary in the will, and clearly he was invested with power to devise it for their payment. Another answer is, that if the testator did not intend it should be liable for the debts, he has made no provision to exempt it; and the law can make none. If a testator does not dispose of his entire estate, the law, to prevent confusion, must do it for him. His purpose may be disappointed by this; but then it is because he has not had a complete purpose, or he has not stated what it is. The estate for life of the son was, however, as safe under one interpretation as the other. His taking the reversion did not expose the life estate to the creditors, since there was no merger or extinguishment of it.

3. It may also be said, that the estate vests, notwithstanding the appointment, only where it is the case of a limitation over in default of appointment, and not in a case where there is no limitation over. This distinction is not admitted. *First,* in the case of real estate. If an estate be devised to A. for life with a power to dispose of the fee, it is clear that the reversion descends to the heir at law, and is vested in him, subject to the operation of the power. It is his seisin alone that can serve the uses of the power. It is as effectually vested in him by operation of law, as if it were devised to him in default of the execution of the power. This is the consequence of the well established principles,—that what the testator does not devise away, descends to his heir;—that the courts always lean in favour of vesting,—and that if the reversion were in abeyance or contingent, the devisee for life might destroy it without having recourse to the power.

*Secondly.* In regard to personalty. The property in controversy is what belonged to the testator, and what he did not dispose of by

(Thomas *v.* Thomas, surviving Executor of Thomas.)

his will. To whom does such property go, but to the executor in trust for the next of kin, *at the testator's death,* subject to be divested by the operation of the power? That which the testator has not given away, cannot be contingent, for the law makes no contingent dispositions. All reversions are vested interests. There is always a person to take what a testator or intestate may die possessed of, and which is not disposed of by him. The objects of his gift may be contingent, or he may give contingently; but if he does not give the whole of his estate away, the part not given, whether it be part of a specific item, or part of the entire fee simple or property in an item, necessarily vests somewhere. The whole difficulty of the question whether the limitation be vested or contingent, is *confined* to the case of a devise over, *after* the limitation of a preceding power to dispose of the entire estate;—it never existed in the case of a descent or intestacy where the law provides instantly an heir or successor, whose estate continues until displaced by the execution of the power. The very ground on which estates limited in default of a power, are held to be vested and not contingent, is, that until the power is executed, there is no estate created by it; and if this is the rule in regard to estates devised, it must be as to estates descended; for in the latter case, if the contingency exist at all, it must spring from the power, which, for the reason above stated, it cannot do, or it must be in the estate *descended,* which is a solecism. It follows, consequently, that after the death of the testator's widow, *Lewis Thomas* had an absolute estate in one moiety, a trust for life in the other moiety, and the reversion absolutely, subject to a power of appointment in himself, in which there is no repugnancy; for it is settled that a power to appoint uses may be reserved to the owner of the fee. The reversion of the estate vested in him, as so much of the use of the estate not declared by the testator, and therefore descending to his heir, or going *quasi ab intestato,* to his next of kin, to yield, nevertheless, to the estate that was to arise out of the execution of the power, if the son should exercise it, which he never did.

If the court assist the will by interpreting it to be a devise to the wife for life, with power to appoint a moiety, and if she fails, then as to that moiety, to the testator's next of kin, and as to the other moiety to the use of the son for life, with power to appoint it, and if he does not, then to the testator's next of kin, the result will be the same; for the legal sense of the words *next of kin,* is next of kin at the testator's death. 1 *Rob.* 150. *Holloway* v. *Holloway,* 5 *Ves. jr.* 399.

Upon either view, the plaintiff's title must be as next of kin to his father; and, consequently, he cannot maintain a suit against his grandfather's executor.

*Ingraham,* in reply.—It cannot be doubted, but that a testator may, if he thinks proper, limit an interest to such person as shall, at a particular time named by him, sustain a particular character.

(Thomas *v.* Thomas, surviving Executor of Thomas.)

His intention is the guide of the courts where the proper construction of his will becomes the subject of discussion; and that the claimant sustains the character of the particular legatee, or object of the testator's bounty, may be ascertained by inference, it never having as yet been contended that a legatee, to take under a bequest, must be absolutely named in the will. *Bartlett* v. *King*, 12 *Mass. Rep.* 537. The difficulty, in the present case, has been created by a state of things never contemplated by the testator, who supposed that both powers would be exercised; but still, if his intention be clear, and not repugnant to any known rule of law, the courts will give it effect, and their leaning is so to do, rather than disappoint it by any refined construction.

The question, then, upon this bequest, is in relation to the moiety bequeathed in trust for *Lewis Thomas*, during life, and over which, by will, he had a power of appointment. Who are we to suppose the testator intended the reversion to go to in the event of the non-execution of *Lewis's* power? To say to his next of kin, including *Lewis*, is begging the question; and would be in direct opposition to the leading provision of his will, by which he charged his estate with all his own debts, and those which *Lewis* " might have contracted until the date of his will, but none that he might contract after that date." The proper construction, therefore, is, that this was a bequest to the executor of *Nathan Thomas*, of a moiety of the fund in trust for *Lewis*, for life only, and upon his death without exercising his power of appointment, in trust for the person who should, at that time, be the next of kin of the testator, which description the plaintiff answers.

It is to be kept in mind, that this is a very inartificially drawn will, and that to construe it by any over refined rule, is to destroy the intention, which is abundantly clear; and hence the answer to the suggestion, that the testator has not said, that *Lewis's* estate should not pay *Lewis's* debts. The testator never supposed for a moment, that he had given *Lewis* any power over the estate which might subject it to debts contracted after the date of his will; and though *Lewis* certainly might have appointed the moiety at his death for the payment of his debts, his father never contemplated such an exercise of the power he had given him to appoint the reversion of a fund, the life interest in which he had so carefully settled.

There is no case precisely like this; and the cases of limitations over of real estate, depend upon principles which produce confusion when applied to the construction of bequests of personalty. The argument by which those cases are called in aid of the defendant's construction of this will is, that there has been no disposition by the testator of his whole interest, and that even in the case of personal estate there must always be some one to take what is not disposed of. This is not denied as a general principle; but the answer to it is, that the testator did dispose of the reversion in the event of the non-execution of the power given to *Lewis*, if the con-

(Thomas *v.* Thomas, surviving Executor of Thomas.)

struction contended for on the part of the plaintiff be the correct one, and there was no intestacy at all. The power to appoint the reversion would have been useless if the defendant's construction be correct; for he had complete power over it upon its vesting in him, in consequence of the supposed intestacy of *Nathan Thomas;* and the very existence of this power in the will, is directly repugnant to the idea of his intending to die intestate, as to the reversion, and to the construction that he has not disposed of it; nor is it very easy to understand how the doctrine, that a power to appoint uses may be reserved to the owner of the fee, supposing it to be well established doctrine, which is not conceded, can be applied to a case of personal estate. There are many modifications of the interest which a man has in land, which cannot take effect in the case of personal chattels; for example, an estate tail.

The case most resembling this in principle, and decided upon the intention, is a very recent one, and is to be found in an elementary writer, (*Roper, Legacies, 3 Lond. Ed.*) It is the case of *Bird* v. *Wood,* 2 *Sim. & Stu.* 400. The bequest was of certain funds to trustees in trust, to pay the interest to the testatrix's daughter for her separate use for life; and after her decease, to the daughter's appointment by deed or will; and, in default of appointment, for the testator's *next of kin,* to be considered as a vested interest from the testatrix's death, except as to any child that might be afterwards born of her daughter. The daughter died without any child, and without executing any appointment. Her husband took out letters of administration to her, and claimed the fund; but Sir JOHN LEACH, Vice-Chancellor, held, that the persons, who at the testatrix's death, would have been her next of kin, if her daughter had then been dead without children, were clearly intended; that the daughter could not be such next of kin, for the persons intended were to take at her death; and must have been living at the death of the testatrix; for their interests were then to be vested. The case of *Holloway* v. *Holloway,* was cited for the husband; but the answer there was, as here, that it was clear that the testatrix did not mean to die intestate as to any thing, and that the will authorized the exclusion of the daughter, because, without excluding her, it was impossible to make sense of it.

The opinion of the court was delivered by

HUSTON, J.—It has been contended that the power of appointment does not prevent the estate or money from vesting in default of appointment. This, however, is where by the will, the estate is limited expressly in case no appointment is made. *Sugden on Powers,* 148, 151. On recurring to the authorities cited, it will be found, that the case in 1 *Vez.* 209, was a devise to the testator's daughter of three thousand pounds, for the use of her younger children, to be by her distributed among them, in such a manner and shares as she shall think fit, and it was held to vest in the children. It is the

(Thomas *v.* Thomas, surviving Executor of Thomas.)

same as if the devisor had given it to her younger children equally, unless she directed otherwise; and the chancellor expressly says, " It might have been different had he given it to his daughter for life, and afterwards to her younger children, because, then it would be contingent and a devise over."

The case in 2 *Vez.* 209, is the same; a devise to younger children in such shares as their father should appoint.

The case in *Ambler*, 562, is of the same kind, and nearly in the same words, and it was held to vest in the children, and the case concludes, the distinction is between the case where a sum of money is provided for portions of children, and the father and mother have only the power to fix the time of payment, and *quantum* for each child; and *where no sum is secured but in case of the appointment*.

This case differs from all of them, but comes nearer that supposed in the concluding words. Here there is no person named or designated to whom the appointment is to be made. The testator stops at the death of *Lewis*; beyond that he does not direct it.

The distinction seems to be, and the point contended for by *Sugden* is, that if the testator after the life estate to *Lewis*, had given the property, if not disposed of by *Lewis*, over to a third person, it would have vested in that person, subject to be divested by an appointment by *Lewis*; but that is not this case.

Certain actions for real estate, in *England*, require a person seised of the freehold to be always in existence, on whom the process may be served, and the doctrine that the fee cannot be in abeyance, has been a means to prevent perpetuities; but every form of action relating to personal estate, may be brought against the person in possession of it; and besides, it vests, on the death of the testator, in the executor for the purpose of paying debts and legacies, whether directed to do so by the will or not. It does not pass out of the executor without his assent, even to a legatee, and when directed to pass to a legatee for a limited time or for a special purpose, the absolute interest may still continue in the executor, if necessary to fulfil the intention of the testator, or to enable him to do his duty as executor; for example, suppose immediately before or at the death of *Lewis*, in this case, a debt of the testator, not barred by limitation, had been made known to the executor, or recovered against him by suit at law; this money could have been legally applied to the payment of such debt.

This matter lately came before this court, in a case much discussed, in which the judges, though not unanimous in other points, agreed on the construction of a devise such as this. I consider the point settled by that case; and, if not, I would consider the intention of the testator to be so plainly expressed in this, as to govern the construction, unless it would contradict some long established rule of law, for most clearly the testator devised his property in this will, expressly for the purpose of preventing his son

from squandering it. It is, none of it, given over to strangers, nor intended to go to strangers. The widow and mother of *Lewis,* is to have all during her life, with power of disposition; evidently, that if *Lewis* did not become more prudent, she might, by will, secure it against his imprudence; if she did not, the father provides for half of it. *Flintham's Appeal,* 11 *Serg. & Rawle,* 16, settles, that the widow and *Lewis,* each took an estate for life; but for that, I should have doubted whether *Lewis,* at least, did not take absolutely.

As to the part devised to the widow, he gives all to her during her natural life, and at her death one half to be at her disposal. She did not dispose of it. It was then personal estate of the testator, remaining after payment of debts undisposed of, and went to *Lewis* as next of kin. This part vested in him absolutely, and is liable for his debts.

The other half remaining at the widow's death was to be put at interest for the use and benefit of his son *Lewis,* and he to receive the interest annually during his life, and at her decease the principal and interest to be at his disposal. This has, as I said, been held a life estate. Real estate given to a man for life, does not descend to his heirs, nor does personal estate given for life, go to his executors or next of kin. *Lewis* had the use during his life, with the power of disposing of it at his death. If it went to his next of kin, he would have been absolute owner, and not for life. *Lewis* did not dispose of it.

This half, then, was in the hands and possession of the defendant as executor of the testator; and, being undisposed of by the will, goes to the next of kin of the testator. The plaintiff is next of kin to the testator, and entitled to this half. The administrator of *Lewis* is entitled to the first half which fell to *Lewis* absolutely at the death of his mother. If *Lewis* left debts unpaid, they must be discharged; and, if any surplus remain, that will go to the plaintiff as next of kin to *Lewis,* but will be demandable from the defendant, in his capacity of administrator of *Lewis.*

Gibson, C. J.—It seems to me, the plaintiff can take nothing as next of kin to the testator; nor claim paramount to his father, unless by implication *under the will.* It is difficult to comprehend how the vesting of an interest undisposed of by the will, shall await the happening of a contingency; or how, where there is an express bequest for life coupled with a power of appointment, the testator shall be said to die intestate, or otherwise, as to the residue, just as the person to appoint may afterwards happen to execute the power. A power to appoint, is not an interest in the thing bequeathed; otherwise a power to dispose of the absolute property, would always be a bequest of the absolute property, which it clearly is not; and, it seems to me, that whatever is not disposed of by the will, sinks into the residuum, and vests in the next of kin necessarily at the death of the testator, subject, however, to be divested by an ex-

(Thomas *v.* Thomas, surviving Executor of Thomas.)

ercise of the power of appointment: But, although the plaintiff, as it seems to me, cannot take as next of kin, a doubt occurred during the argument, whether to effect the manifest intention that the property should be exempt from the legatee's debts, and to prevent the will from failing of effect altogether, we ought not to imply a bequest over, in the event of a failure to appoint. And, undoubtedly, we ought, if there were any thing to designate the person to take. But there is nothing to designate the plaintiff, except that he is the next of kin to the immediate object of the testator's bounty; a circumstance much too slight to found an implication. Where a testator omits to provide for an event, which he probably would have done had the particular instance occurred to him, a court of justice cannot repair the defect by inserting the necessary clause. The authorities for this are collected in *Roper on Legacies, Ch.* vi. *Sect.* 7, where they may be consulted. Here the plaintiff would probably have been provided for, had the contingency which has since happened, been foreseen. But this is by no means certain. He evidently was not intended to take in every event; else there would have been a positive limitation over, instead of subjecting the legacy to his father's power. It seems, then, that as nothing was bequeathed to the father but what vested in him by operation of law, an interest for life, superadded to the absolute property, being a legal absurdity, the entire bequest fails of effect; so that the property in dispute having vested absolutely in the father, is subject to his debts in a course of administration.

ROGERS, J., concurred with GIBSON, C. J.

Judgment for the plaintiff.