Lansing, Ch. J.
delivered the opinion of the court. Two. points have been made in this cause, as reasons for setting aside the verdict.
1. That co-parcenérs cannot sever in ejectment, so as to maintain the action severally.
2. That the plaintiff had neglected to give notice to quit.
As to the first point, the doubt seems originally to haye been whether co-parceners could join, and not whether they could sever, in an action of ejectment.
In the case of Millener v. Robinson, (Moore, 682,) two co-parceners declared quod demiserunt, this was excepted to, and the exception was held to be well taken.
In the case of Banner v. James, (1 Ld. Raym. 726,) Holt, J. ruled that co-parceners might join in ejectment, and denied the case in Moore to be-law.
In the case of Morris v. Barry, (1 Wilson, 1,) there were two demises of the same date for the same land, and for the same term to which it was objected that both lessors could not have title at the same time, and, therefore, the plaintiff could not enter by virtue of both demises.
This was on error, after verdict. Lee, Ch. J. in giving the opinion of the court says, “ if by any means [*234] whatever, *the plaintiff can. be supposed to have a title as laid in the declaration, after a verdict we will hold his judgment right, and there, is no inconsistency, but that two leases of the same term, and of the same lands, maybe good.”
Sir John Strange, who argued for the defendant, had put a case, “ that if there be two joint tenants, and one of them make' a lease for the whole land at one time, and the other make a lease for the whole land at another time of the same *281 day, the moiety of each joint tenant will. only pass, and in such case the plaintiff could not have declared more properly than he had done.” Lee, adverting to this case, observes, in the case of two joint tenants, each of them, as they are seised per mie and per tout, may make a lease of the whole, although his moiety will only pass.
That the leases in this instance are stated to extend beyond the right, is evidently not the ground upon which the opinion of their validity is founded, for their operation is limited to the passing of their respective moieties, and joint tenants and co-parceners have similar interests: Of consequence, the reasoning applies to this case. Indeed, the solution of a question, whether a co-parcener is legally competent to make a lease of his portion of the joint estate, seems to determine the controversy. It appears from Co. Lit. 167, a. that she is competent to make such lease, and it follows, that she can sustain her ejectment on her own demise, for her proportion of the common estate.
The case of Stedman v. Page, (1 Salk. 391; 12 Mod. 86, S. C.; 5 Mod. 141, S. C.; Comb. 347, S. C.,) reported in Salkeld by the name of Stedman v. Bates, was relied on by the defendant to support the doctrine he contended for. That case was in replevin, in which the defendant avowed for a moiety of rent, reserved by the ancestor of co-parceners, and it was held, that one co-parcener cannot make such avowry for a moiety of rent before partition. It is also said, that both sisters must join; both make but one heir, to whom the rent descends as one entire inheritance.
*This avowry was by a co-parcener of a moiety of [*235] a rent, of which the ancestor was seised. It was before partition, and they could only entitle themselves as heirs jointly ; the rent was there- merely a subject of controversy, and considered a§ a chose in action impartible in its nature. It would be an extremely inconvenient doctrine, if It were established as law, that each co-parcener should be permitted to sustain her action separately for a portion of the rent, or that, a tenant should be subject to several distrésses before partition.
*282 Some authorities were produced to show that co-parceners were compellable to join in a praecipe. It is not necessary to trace the reasoning on this subject. The doctrine respecting it appears inapplicable to the present case. In droitural actions, perhaps, the reason for imposing it on them to. join, was to prevent the estate in co-pareenary from being converted into an estate in common, by the mere recovery, without the privity or consent of the other eo-parceners. In actions of that description, as well as possessory actions, the common practice (during the time those actions were usually brought) of summons and severance, disengaged the party disposed to assert her right by action, and enabled her to proceed without - any embarrassments from her associates.
We find no process correspondent to summons and severance, in ejectment, and hence, if any remains of ancient strictness should operate against the plaintiff’s right of recovery, we should be strongly opposed to it. We are, however, satisfied that this is not the case, and that the plaintiff may well sustain this action- on the first ground.
The second question does not depend on an implication of law, arising from a silent, acquiescence, or a series of equivó- . cal acts as to the nature and duration of the defendant’s tenure, but upon the express. agreement, of the parties. The terms of that agreement, on the part of the defendant and his associates, were, “ in consideration of your indemnifying us, we engage to hold the land we possess for [*236] *you against all others, and this without limiting any period, or stipulating any service or compensation for its use.”
If the defendant had been strictly a tenant, the. law would have imposed on him the obligation of holding the premises for his landlord against all others. It was an essential part of his duty, superadded to any rents or services which might have been reserved and exacted from him in that capacity. It has, therefore, mot the least analogy to the tenures of Frankalmoign© and .Comage, (Co. Litt. 93 b. 10.6, b,) to-which, it has beenjikened in the argument. In those cases, the services had no necessary connection with the land granted. *283 In the former, they were considered as contributing to the salvation of the soul of the donor, (and esteemed a sacred duty) in the latter to the public security, by winding a horn at the approach of an enemy. Both tenures imposed troublesome services on the tenants; and the tenure by carnage was a species of grand serjeanty, or of knight-service, the former of which being a service exclusively attached to the person of the sovereign.
A strong disposition has been discovered, for a length of time, to give tenancies at will a more determinate and certain duration. If any circumstance be presented to afford a reasonable construction to convert them into a more certain term, courts have uniformly availed themselves of it to affect an object connected with the general convenience of the community • but there is nothing in the contract -between the parties in the present case, or in their subsequent conduct, which can afford any ground for that purpose. No rent -is reserved ; no periodical services are to be performed ; no ¡act by which the original contract can be supposed to have been varied ; it presents simply the stipulation, that .the land shall be held by the one party for the other.
The defendant .appears in this instance to resist the performance of the only service for which his enjoyment was permitted, the preservation of the land he possessed for the heirs and devisees of Sir Peter Warren ; he has entered *into a deliberate contract to perform, this ser- [*237] vice; he was to hold it as their servant or ¡bailiff, and to the performance of that duty, we think under all the circumstances, he ought to be strictly held.
The bringing of this action was a legal demand, which could not have subjected the defendant to any inconvenience if he had disclaimed. He might have discharged himself from the mesne profits and costs, by showing the manner and condition of his occupancy.
We are, therefore, of opinion on both points, that the defendant tpust take nothing by his motion.
Hule refused.