Judge Owsley
delivered the opinion of the court:
This action was brought by the appellants as heirs of Henry Woodyard, deceased, to recover a negro woman and her children, which they charge to them belong, and from them the appellee detains.
The negro woman is admitted to have belonged to the ancestor of the appellants at his decease; but the appellee asserts a right to her under a sale since made by the sheriff of Mason county.
The sale appears to have been made by the sheriff under an order of the county court of Mason, directing him to take the estate of Robert Woodyard, deceased, in his hands, and administer the same; and the only question presented for the decision of this court is, did that order authorise the sheriff to dispose of the negro woman in contest?
/.Without enquiring .whether, in any possible state of base, the sheriff would, by the order alluded to, be autho-rised'to sell the estate of the person described by it, upon no principle can it be construed, to apply to the estate of the ancestor of the appellants. In terms it applies to the estate of Robert Woodyard, and not Henry; and although by the production of evidence, an attempt was made to prove the order was intended to apply to the estate of Henry, that description of evidence was inadmissible to explain away the plain and obvious import of the word.a The order then, as it cannot be made to apply to the estate of the appellants’ ancestor,-it cannot have given any authority to tlie sheriff to sell his estate, and consequently the court below should have so instructed the jury.
The judgment of that court must, therefore, be reversed, with cost, the cause remanded, and such further proceedings then had as may be consistent with this opinion.
The counsel for the defendant in error having petitioned for, and procured a rehearing^ the court, on the 14th October, 1817, by Judge Owsley, delivered the following opinion:— - *
Upon a review of this cause, we are still of opinion the former opinion delivered bv this court is correct; but from the pleadings in tile cause, it becomes material to decide, whether an heir can, without the previous assent of the ad* *11 jninistrator, maintain detinue for a slave belonging to ibe estate of the intestate?
An heir can not maintain an action in his own name for a siavej without the assent of the exer- or ach min.strator,
Neither can a specific ie gatee maintain such suit, without such assent.
That, upon common law principles, an heir cannot maintain either trover or detinue, for the recovery of a chattel, there is no doubt; for, as by the grant of administration, all the personal estate vests in the administrator, he alone can maintain an action either to recover the specific chattel, or damages for its conversion.*
But it is contended, that under the statute making slaves real estate, (2 Litt. pa. 120,) the heir gains such a property, in them, immediately upon the decease of the ancestor, as will enable him to maintain an action for their recovery.
The heir, it will be admitted, gains an interest in the slaves; but we do not suppose he acquires such a right .of property as will authorise him, without the assent of the administrator, either to recover them, or damages for their conversion.
From the uniform train of adjudications, both in Virginia and this country, under the statute in question, making slaves assets in the hands of the administrator, it clearly follows the heirs’ title is not, until assented to by the administrator, complete; for, as the administrator is liable to creditors for the value of the slaves, he of necessity must be authorised to convert them into money, and to that' end he is entitled to their possession; and consequently he may maintain an action for any injury done to them after the death of the intestate.
The interest which an heir gains, under the statute, in the slaves of his ancestor, is very much like that which, at commom law, a legatee acquired under the will in a specific legacy. In both cases the property is assets fer the payment of debts-: in the former case, in the hands of the administrator, and in the latter, in the hands of the executor. In the former case it is incumbent upon the administrator to see that the debts are paid before the slaves are delivered to the heir; and in the latter case, the executor should not deliver the specific legacy until the creditors are satisfied; and when the debts are paid, by a suit in equity, the heir or legatee may obtain the possession of the property, but the property transferred, either to the heir, under the statute, or to the legatee, under the will, is of an inchoate character, to-be prefected in the former case by the assent cf the administrator, and in the latter case by the assent of the executor.
But it is contended, that the specific legatee may maintain *12 trover, for the conversion of the legacy by a stringer, after the decease °f the testator; and hence it is infered, that an heir, since the statute, is entitled to a similar remedy, for an injury to the slaves.
Upon principle it would seem such an action cannot be maintained by the legatee, without the assent of the executor; .for, as the law casts the title upon the executor, and gives him a right to the immediate possession, the plain and natural inference is, that the executor, and no other, without his assent, is entitled to the action. And on the score of authority, it is equally clear the legatee cannot maintain the action.
Weave aware, it is said in Bacon’s Abridgment, title trover, letter C, page 683, that “ If a testator has bequeath- “ ed specific goods, the legatee may maintain an action of “ trover for the conversion thereof by a stranger, although “ they have not been delivered to him by the executor; be- “ cause a general property is vested in him immediately up- “ on the death of the testator.” and to prove the position, Broke, title trespass, pl. 25, is cited.
From the reason assigned in the case cited, as there is. no suggcsticn,negativing the idea, it would seem to follow, that before the legatee could maintain the action, the assent, of the executor would be indispcnsible; for as wd have shewn, such an assent is necessary to prefect the legatee’s right, until then, lie cannot gain a general property in the legacy.
To asssertain that the case from .Bacon should be so understood, we have not had an opportunity of looking into-the case cited from Broke; but what is equally satisfactory upon the subject, Chilly, in speaking upon the right of a legatee to sue, says, that “ after the assent of the executor he may maintain an action for any injury committed subsequent to the decease of the testator;” and in support of the position, refers to the same case in Broke, which is cited by Bacon. 1. Chitty, pl. 167,
These authorities are moreover fortified by Toller, in his law of executors, 307, where he says, that even in the case of a specific legacy, if it be in the hands of the legated, and the assets fully competent to pay the debts, vet he cannot retain it in.opposition to the executor; nor has (says the author) such a legatee authority to take possession of the legacy without the executor’s assent, although the testator* by iiis will, expressly direct him lodoso, .
Note. — The circumstances of this case occurcd before the passage of the act of 1800, chapter 270, 2 Littel, pa. 374, vide post. Iron’s Exx. vs. Luckey.
Wicklijfe for pltf. Hardin for deft.
Hence we infer, a specific legatee, according to the doo trine of the common law, does not acquire such a right of property under the will, as enables him to maintain, without the assent of the executor, an action, even against a stranger; and since the statute making slaves real estate, as they are assets in the hands of the administrator, without his assent, we also suppose the heir cannot maintain an action either to recover the slaves from a stranger, or damages for their detention or conversion. %
If, then, we are correct in the view we have taken of this cause, it results, that the court below improperly overruled the appellee’s demurrer to the appellants replication to his sixth plea.
For, as by that plea, the limitation of five years is shewn to have run against the executrix, it is impossible that by any assent of hers the right of suit can be so translated to the heirs, as to enable them, in cpnsequence of their infancy, to save the operation of the limitation.
The judgment must, therefore, be reversed, with cost, the cause remanded, and judgment entered in favor of the appellee, upon the demurrer to the replication to his sixth plea, unless the appellants should apply for leave to amend their replication; and such other and further proceedings had as may be consistent with this opinion.

 Peak’s Evidence, 28.