WARNER (BLANCHARD'S GUN–STOCK TURNING FACTORY v.).    See Case No. 1,521.

---

## Case No. 17,179.

### WARNER v. BRINTON.

[15 Haz. Reg. Pa. 49.]

Circuit Court, E. D. Pennsylvania. 1835.

CONSTRUCTION OF WILLS — ADMISSIBILITY OF EXTRINSIC EVIDENCE—INSTRUCTIONS TO SOLICITOR.

[1. Instructions given to a solicitor for the preparation of a will are in no case admissible to control or contradict the plain words of the will as afterwards executed, or to supply an omission, unless there is something on the face of the instrument which shows a mistake or omission by pointing or referring to something which the instructions will explain. In such case the instructions are considered as connected with the will by the reference, so as to bring the case within the rule, "Id certum est quod certum reddi potest."]

[2. When a will is ambiguous in its words, and contains no reference to anything which can make it certain, or on its face admits of no construction, it is void.]

[3. Where a will duly and validly executed in all respects, and containing a clause revoking in absolute and unqualified terms all previous wills, wholly omitted to make any disposition of certain lands belonging to the testator, and there was no ambiguity on the face of the instrument, held, that the will could not be aided by admitting in evidence a clause in the instructions given by the testator to his solicitor, which contained directions for the disposal of this property, but to which no reference was made by the will, and which could not be connected with it by any construction; nor was such evidence rendered admissible by a recital in the introductory clause of the will, indicating an intention on the part of the testator to dispose of all of his property. In such case the testator must be held to have died intestate as to the land in question.]

At law.

BALDWIN, Circuit Justice (charging jury). Edward Brinton, in his lifetime, was seized of a tract of land in Birmingham township, Chester county, lying on the south side of the Kennett road, on which he resided, containing by estimation eighty acres; he died leaving one son, the defendant, and eight daughters, of whom the wife of the lessor of the plaintiff is one. Six of the other daughters, with their husbands, have conveyed their shares to him, so that he is invested with the title to seven-ninth parts of this land, if Edward Brinton had not disposed of it in his lifetime by his will duly executed, so as to pass the land to the defendant, and will be in such case entitled to your verdict. On the other hand, if Edward Brinton did devise this land to his son James, your verdict must be for the defendant. The whole case therefore turns on the single question of whether he made a valid testamentary disposition of this property, by which the descent to all his children, as directed by the act of assembly in case of his dying without a will, will be interrupted in favor of his son.

It is not pretended that Edward Brinton died without any will; it is admitted that the paper executed on the 7th August, 1806, is a valid will, duly executed and proved according to law to pass real estate, but by this will he only disposes of the property in question during the widowhood of his wife, saying nothing to whom it should go after her marriage or death. Unless, therefore, he has disposed of the remainder in fee, by some other paper duly authenticated to pass lands, or which can be transferred to, and be made a part of his last will and testament, the law considers him as dying intestate as to his land, as if he had made no will at all.

The act of assembly requires that all wills concerning real estate shall be in writing, and be proved by two witnesses. You will then consider a will to be the written declaration of a man of his intention as to what shall become of his property after his death, proved by two witnesses. The evidence in the case is before us in the transcript of the proceedings of the register's court of Chester county, (vide the copy of the will and certificate of probate,) and the petition to the legislature. This is legal and competent evidence to establish the paper set up as a will, in the absence of any opposing testimony. None has been offered in opposition to the executed will, you will therefore take that so far as it goes, as the established will of Edward Brinton, agreed to by both parties now, and never intended to be contested by any of the family.

As to the paper of instructions, or the rough draft of the will, drawn up by Mr. Gibbons, which is copied into the certificate of probate, you will take it only as prima facie or presumptive evidence of its being any part of the will of Edward Brinton, open to be contradicted or disproved by any testimony competent to show, either that he did not make it his will in fact, or that it is not in law his will. The other children are as fully at liberty to contest the paper after probate as before, the decree of the register's court concludes them in no matter either of law or fact, whether it relates to the sanity of the testator, the execution proof or construction of the paper. 3 Rawle. 20; 4 Serg. & R. 193; 12 Serg. & R. 283; 10 Serg. & R. 84. It is only in virtue of the act of assembly, that the proceedings of the register, or the register's court can be admitted in evidence; neither the copy or probate of a will are evidence of a devise of lands at common law. 5 Serg. & R. 213; Harrison v. Rowan [Case No. 6,141]; [Darby v. Mayer] 10 Wheat. [23 U. S.] 465; [M'Cormick v. Sullivant] Id. 201. And however regular and full the probate may be, it is only prima facie evidence; its effect is destroyed if, on the face of it, the will appears to have been unduly admitted to record, or it appears by extrinsic evidence. 5 Serg. & R. 215; Hylton v. Brown [Cases Nos. 6,981 and 6,982]. This may be done by proof of the incompetency of the witnesses, defect in their evidence to establish the necessary facts, or by showing that in point of law the proof before the register was insufficient to establish the paper ad-

mitted to probate as the last will and testament of the testator. 1 Yeates, 87, 90; 4 Yeates, 413. In order to show the legal insufficiency of the proof on which the register's court acted in the present case, the plaintiff has given in evidence the whole proceedings before the register and in the register's court, which were the foundation of their decree, admitting the paper in question to probate, as part of the will of Mr. Brinton. It was necessary for them to do this, in order to make their objections to its establishment as a will, for otherwise the certificate of probate, under the seal of the court, would have been open to the allegation, that it was made in due and legal evidence; and as the copy and probate were evidence without inquiring on what ground the court acted, the plaintiff would have been much embarrassed, without resorting to the testimony referred to in their minutes. By inspecting them, it now appears, that the only proof of the devise of this land to the defendant is contained in the minutes of the evidence of James Gibbons, of William and Amos Brinton, and a deposition or statement of James Gibbons which was read in the register's court, but is now lost, and no copy or evidence of its contents produced, and the instructions themselves. These minutes are as follows: (Vide minutes and instructions.)

There is no doubt that the plaintiff had a right to refer to these minutes, to show the foundation of the decree of the register's court, but we entertain strong doubts whether they are competent evidence in an ejectment to try the title to the land; they relate exclusively to a matter wholly unconnected with the personal estate, or the administration of the will; and it might have been a serious question whether the evidence was admissible, had the objection been made. Vide Boudereau v. Montgomery [Case No. 1,694]; [Marine Ins. Co. v. Hodgson] 6 Cranch [10 U. S.] 219; [Wood v. Davis] 7 Cranch [11 U. S.] 271, 273; [Ferguson v. Harwood] Id. 412; [Hopkins v. Lee] 6 Wheat. [19 U. S.] 113; 2 Yeates, 341; 2 Bin. 511; 3 Rawle. 20; 4 Yeates, 413; 4 Serg. & R. 193; 10 Serg. & R. 84; 12 Serg. & R. 283, 284; 2 Rawle, 178; [Barr v. Gratz] 4 Wheat. [17 U. S.] 220; [McCormick v. Sullivant] 10 Wheat. [23 U. S.] 201, 204; [Darby v. Mayer] Id. 465, 470; 5 Serg. & R. 214, 215; Boudereau v. Montgomery [supra]. But as the counsel on both sides have considered it properly before us, and have rested the case of their respective clients in its legal sufficiency, to establish this clause in the instructions or rough draft of the will as a devise of the land in question, the court will consider it in this aspect alone. Taking the testimony as it is reduced to writing with all legal inferences which a jury can legally draw from it, as true to the full extent, and connecting it with the only other evidence in the cause, the petition to the legislature, we proceed to inquire whether Edward Brinton did devise this land to the defendant.

For all the purposes of this case, the facts as stated are admitted to be proved, and the only question which remains is their sufficiency in law to make out the issue on the part of the defendant. This is a question of law, which the law must decide. 8 Coke, 155a. It is an universal rule of property that it must descend and be enjoyed according to the course which the law has prescribed, unless the owner has made some other disposition of it which the law recognizes as valid and binding. 3 Rawle, 20.

The acts of assembly of Pennsylvania have directed that the estate of a person undisposed of by will shall descend to and be enjoyed equally by all his children; of the natural justice of this provision, and its perfect congeniality with the genius and spirit of all the institutions of the state and country, no man can doubt. It was a rule of the common law, founded in the wisdom of ages, and adopted by our ancestors, that the heir at law should not be disinherited unless by the plain words or necessary implication from the will of his ancestor, and this rule is assumed as a sacred land mark of property in all countries where the law of the land is respected, as the guardian of the rights of the people. It is never departed from in that country from which we derive our best rules of jurisprudence, in which the oldest son is the sole heir to all his father's lands; surely it ought not to be less respected here, where there is no odious law of primogeniture, and equality of right between the sexes has been established from the first settlement of the province, in conformity with the policy of its founder.

This law leaves every man at liberty to do with his property as he pleases—his will is the supreme law, and when he speaks it must be obeyed. It is only when he makes no will or none which disposes of any particular part of his estate, that the law makes a will for him, and does that which he omits to do for himself, by declaring to whom it shall go if he leaves behind him no directions testifying his intention in writing, and so attested as to afford authentic evidence of his will as a muniment of title to the favored object of his bounty.

There is no rule more reasonable than that which imposes on those who wish to divert the property of a deceased person from the established course of succession, the necessity of doing it by legal and satisfactory proof; nor is there any subject in which a regard to the peace of society and the security of property makes it more incumbent on juries and courts to adhere to fixed and settled rules than in cases of wills. They are the title deeds to a vast proportion of the property held by our citizens, and unless they are regulated by steady and well established principles, we lay a train of gunpowder under the possessions of purchasers. If a paper is established as a will, upon other than legal proof with any view to avoid a supposed hardship in a particular case, the consequences are interminable. If a paper defective in law to pass an estate should be permitted to disturb the succession established by the act of

assembly, we must give effect to one the object of which was to revoke a former will, and thus in the zeal to make wills where a deceased person had made none, we should destroy those which had been most solemnly executed. For it must not be forgotten, that the same evidence which will take an estate from an heir at law, will take one from a devisee under a will, which generally speaking is made and recorded by the same acts, and they have the same effect for both purposes.

The law is very liberal in favor of last wills; it makes great allowance for infirmities of body and mind, dispenses with all forms, and requires no solemnities which are not absolutely indispensable in point of substance, to show the deliberate intention of the maker to dispose of his property in some definite manner. The requisites are few and simple, every man, however unlettered, has the means of making his will by expressing his intention in writing and the writing proved by two witnesses; he has only to thus point out the thing he gives, the person to whom it is given, and the law effectuates his intention by declaring such paper to be his last will and testament.

Has Edward Brinton done so as to this tract of land? If he has, the defendant is entitled to it; if not we cannot make a will for him. The question is whether this paper is his will. In cases of this kind very interesting questions often arise as to the kind of evidence, which is admissible to prove the various facts on which the validity of wills depend; those which have been made in this case are highly so; they have been argued on both sides with great ability and learning, and deserve your and our most serious consideration. We do not know how much property may depend on the final settlement of the principles involved, and questions arising on this case, and cannot proceed with too much deliberation; we cannot settle the law; our opinion is subject to the revision of a higher tribunal, which will correct our errors, but cannot reach yours. In laying down the law to you, it is not as one may think it ought to be, but as in our consciences and on our oaths we believe it to be settled by the legislature and courts of justice, as a rule from which we cannot depart. We shall do it plainly and without reserve, so that, whether our judgment is affirmed or reversed, this case will eventually place some principles beyond further discussion, and those who will read it, be able to understand what is, and what is not, a will. There is but one kind of evidence on which a paper can be established as the last will and testament of any man.—it must be in writing, and proved by two witnesses, to be the written declaration of the maker's intention, to dispose of his property according to its directions. The disposing intention and the fact of disposition must appear substantially on the face of the paper; there must be a devisor and a devisee and a thing devised. When, by a fair construction of the instrument it contains these three requisites, it is a will, however informal if duly proved; if either are wanting, it is no will.

In the will executed by Mr. Brinton, and witnessed by the subscribing witnesses, there is no devise of the remainder of this land; if there is any, it is by the instructions or rough draft written by Gibbons, but it is admitted that these were superseded in every thing but the one paragraph by the executed will.

We must then be satisfied that this clause of the rough draft was legally intended to remain as his will, while all the rest was supplied. The law requires that the will should be in writing, and proved by two witnesses, but it need not be signed by the testator (6 Serg. & R. 5); nor attested by subscribing witnesses, though it must be proved by two. [Lawson v. Morrison] 2 Dall. [2 U. S.] 286; 6 Serg. & R. 47, 223, 484; 16 Serg. & R. 84; Hylton v. Brown [Cases Nos. 6,981 and 6,982]. It need not be written by the testator; if done by his desire or consent by another, and he adopts it, and that is proved by two witnesses, it is sufficient. 1 Yeates, 91; 1 Serg. & R. 203; 6 Serg. & R. 454. Or if a paper containing "the substance of a will with the usual act of execution subjoined, though without subscribing witnesses or proof of publication, if found in his possession, that is prima facie evidence of its adoption as a testamentary act." But if the paper is destitute of every formal act of authentication, the presumption is adverse, in the absence of proof of actual publication or any other act of recognition equally satisfactory. The omission to perfect an instrument which carries with it intrinsic evidence of a design to superadd an act of authentication which the decedent has not been prevented from executing by sudden death, is referred to a change of intention. Scraps of paper notes—or memoranda or indorsements—on bonds, though intended to denote a testamentary disposition, must contain at least the substance of a devise. 3 Rawle, 20, 21; 4 Serg. & R. 557.

The testator may intend to correct the paper; he may give the rough notes or instructions to a scrivener to make a formal draft of a will; yet these will not invalidate it as a will, if he dies before the formal draft is executed or read over to him for his approbation; if the original instructions are duly proved, they will control it when they differ. 3 Yeates, 511, 514. And positive proof by one witness and circumstances equal to such proof by another are sufficient. 16 Serg. & R. 84, 85. But the paper must contain sufficient intrinsic evidence of a testamentary disposition, and be intended to be his last act in disposing of his property after his death.

This, then, is the important question in this case: Was this devise in the instructions devising the homestead to James, intended by the testator to be his last will as to this part of his estate? That it was so in fact we have no doubt, but this does not suffice to make it operative as a will under the act of assembly. That intention must not only have existed in fact, but be now so proved as to enable the court to carry it into effect according to the

law. As at present advised, we should not doubt that if the testator had died without an opportunity of putting the rough draft into form by executing a will, these instructions would have been considered as his testamentary disposition of his property, but in the event which has happened a very different case is presented. He makes a formal will, executes it in all legal form and solemnity. It is attested and proved by three subscribing witnesses, and published as such in their presence. It expressly revokes all former wills by him before made and declares this and no other to be his last will and testament. Such a will would have revoked the most solemnly executed will which he had made before, and it must have the same effect as to all other papers of a testamentary nature; the important question then arises, can this clause in the rough draft be now established as his will, in relation to the property in controversy, on the evidence before us? If it has any effect, in law, it must be to make another will besides the one he has thus executed, when he has solemnly declared that no other will shall be his will though before made by him; to confirm and ratify what he has annulled, by setting up a revoked paper, and virtually expunging the revoking clause from the executed will. The evidence must go farther than enabling us to get rid of the revocation; it must authorize us to add the revoked paper to the will, so as to make it a part of it, in the same manner as if it had been introduced into it by the testator himself.

On a careful examination of the evidence, we find none which goes to show any act or declaration of the testator in relation to the disposition of his property subsequent to the execution of his will. What precedes the execution can have no bearing on the revoking clause, for a revoked will must be republished before it can have life or effect. 4 Serg. & R. 296, 297. The testator has declared the executed will to be his only and last will and testament, so we must adjudge it unless the law will permit us to alter, explain, or construe it by evidence aliunde, as a case of ambiguity,—either (1) an ambiguity or doubt on the face of or in the body of the will; -(2) that which arises on matter not in the will, but out of it, when the words are clear; (3) that which is intermediate, partaking of the character of patent and latent ambiguity. Bac. Law Tracts, 99, 100; Earle v. Sawyer [Case No. 4,247]. That which arises from a mistake of the testator or his omission to express himself intelligibly without explanation by averment or collateral proof.

In the case of Packer v. Nixon [Case No. 10,653], we expressed our entire concurrence with the declaration made by the present chief justice of the supreme court of this state, that "any settled rule which leads to a determinate effect (in comparison with which the fulfilment of any particular intent is of secondary value) is preferable to a process which would destroy every thing like stability of decision, and leave titles depending on intention to the decision of chance and the sport of opinion." Page 13; 2 Rawle. 32; [Wright v. Denn] 10 Wheat. [23 U. S.] 228. We also laid it down as a settled rule, that the intention of a testator must be collected from the words of the will, that no averment ought to be taken out of the will which cannot be so collected from the whole will applied to the subject matter to which it relates (page 14; 3 Coke, 28b; 3 Atk. 258; 4 Coke. 48; 5 Coke, 68b; Latch, 137; Harg. Law Tracts. 495, 496; 1 Brown, Ch. 216; 3 Bin. 148, 161); and that the parol declaration of the testator as to who should be his heir was of no effect in law (page 18, Pl. 345b).

There are however cases in which parol evidence will be admitted to show or explain the written intention of a testator in cases of what are termed latent ambiguities or doubts, which are thus defined by Lord Bacon: "There be two sorts of ambiguities by words. 'Patens' is that which appears to be ambiguous on the face of the instrument. 'Latens' is that which seemeth certain and without ambiguity for any thing that appeareth upon the deed or instrument, but there is some collateral matter out of the deed that breedeth the ambiguity." Bac. Law Tracts, 99; 1 Mar. 11; Hob. 32; 4 Dowl. 93. "Ambiguitas patens is never holpen by averment, and the reason is, because the law will not couple and mingle matter of specialty, which is of the higher account, with matter of averment, which is of inferior account in law, for that were to make all deeds hollow and subject to averment, and so, in effect, that to pass without deed which the law appointeth shall not pass but by deed." Bac. Law Tracts, 99; Vide [Grant v. Naylor] 4 Cranch [8 U. S.] 224, 234; 8 Coke, 155. "Ambiguity of words by matter within the deed and not out of the deed shall be holpen by construction, or in some cases by election, but never by an averment, but rather make the deed void for uncertainty. 8 Coke, 155a. As if a man give land to J. D. and J. S. and heirs and do not limit to whether of their heirs, or give land in tail. the remainder in tail with a proviso, that if he or they or any of them do any, &c., it cannot be averred on this clause, that the restraint was only on him in the remainder and the heirs of his body, and that the tenant in tail in possession was meant to be at large." Bac. Law Tracts. 99. "When the uncertainty cannot be helped by construction or intention it shall be holpen by election; as if I grant ten acres of wood in sale where I have an hundred acres; whether I say in my deed or not that I grant out of my 100 acres, yet here shall be an election in the grantee, which 10 he will take, and the reason is plain, for where the thing is only nominated by quantity, the presumption of the law is that the parties had indifferent intention. which should be taken." Bac. Law Tracts, 100; 21 C. L. 290; 8 Coke.

155; Hob. 32. "But if the ambiguity is latent, as if I grant my manor of S. to I. F., and I have two manors, North S. and South S., this ambiguity is matter of fact, and shall be holpen by averment, whether of them it was that the party intended should pass. But if the deed recites whereas I am seised of the manor of North S. and South S., and I lease you one manor of S., there is clearly an election; so if the recital is of two tenements in D., and one is leased, these cases are where one name and appellation denominates divers things. There is another class of cases where the same thing is called by divers names, which shall be holpen by averment, because there is no ambiguity in the words; the variance is matter of fact; but the averment shall not be of intention, because it doth stand with the words, for in the case of equivocation the general intent includes both the special, and therefore stands with the records." Bac. Law Tracts. 101; Peisch v. Dickson [Case No. 10,911]; [Mechanics' Bank v. Bank of Columbia] 5 Wheat. [18 U. S.] 336, 337, S. P. "As if I give lands to Christ's Church in Oxford, and the name of the corporation is C. C. in the University of O., this shall be holpen by averment, because there is no ambiguity in the words." Bac. Law Tracts, 101; Hob. 32.

These are the illustrations of the maxims, "Ambiguitas verborum verificatione suppletur, nam quod ex facto oritur ambiguum verificatione facti, tollitur," by a great jurist in ancient times, conformably to which are those which have since received the highest judicial sanction. When a latent ambiguity is produced in the only way in which it can be produced, that is by parol evidence, it must be dissolved in the same way, and there is no cause for admitting it to show the intention upon a patent ambiguity on the face of the will. They are all cases of latent ambiguity, and the objection to supply the imperfections of a will are founded on the soundest rules of policy and law. [Faw v. Marsteller] 2 Cranch [6 U. S] 29. It would be full of great inconvenience that none should know by the written words of a will what construction to make or advise to give, but that it should be controlled by collateral averments out of the will; and if they are admitted, how can there be any certainty? A will may be any thing, every thing, nothing. 1 Johns. Cas. 234; 6 Conn. 275. The statute appointed the will to be in writing, to make a certainty, and, should we admit collateral averments and proofs, and make it utterly uncertain, the witnesses, and not the testator, would make the will. 1 Mod. 210: 3 P. Wms. 354. "If the effect of the introduction of the evidence would be to add new matters to the will, either the subject of the devise, or the name of the devisee, it would also authorise the striking out of what was contained in an executed will, and thus though the will was made in form by the testator in his lifetime, it would be really made by the attorney after his death, and all the guards of the law be utterly swept away." 21 C. L. 288, 292.

The established rules of law are safer guides in the administration of justice, than any considerations as to their bearing on any particular case of supposed hardship; and it is more wholesome to struggle not to let little circumstances take a case out of a general rule, than to struggle by them, to prevent its application. 6 Ves. 641.

As to instructions for making a will the established rules are that where they are subscribed as preparatory to a will, the execution of the will supersedes them, and where they differ the presumption is that the testator adopted the alteration. 21 C. L. 292. To establish any paper as a testamentary one, the court must be satisfied that the testator intended it to be a part of his will, and if there is more than one paper set up as a will. it must be shown that they were intended to be cumulative. 1 Cond. Ecc. [3 Phillim. Ecc.] 452; 1 Cond. Ecc. [1 Phillim. Ecc.] 30, 63.

If an unfinished draft is propounded as a will, it must appear that the deceased was prevented from executing it by invincible necessity or the act of God. 1 Cond. Ecc. [1 Phillim. Ecc.] 30, 31, 63; S. P., 3 Rawle, 20, 21. If he omits to transfer a provision from the draft to the will, it cannot be supplied by parol evidence in connection with the draft, whatever may be the opinion of the court as to the actual intention or hardship of the case, though when the mistake was pointed out to the testator, he proposed to insert the omitted legacies in the formal will; but, as he did not do it, the court could not supply the defect. 1 Cond. Ecc. [1 Phillim. Ecc.] 63, 64. When an instrument is executed by a competent person, he is presumed to know its contents and effect, and intend to give it the effect which follows from its contents and construction. 3 Cond. Ecc. [1 Hagg. Ecc.] 290; 4 Cond. Ecc. [2 Hagg. Ecc.] 209. Subsequent instructions intended for a new will, duly proved, may be a codicillary paper, and operate as a revocation pro tanto of a former executed will. 1 Cond. Ecc. [2 Phillim. Ecc.] 267, 269, 270; 3 Rawle, 20.

In some cases instructions may be given in evidence when the executed will is ambiguous on the face of it, as to the person devisee,— as a bequest to "her." The question was to whom the reference was. The instructions were admitted to show that testator had directed the legacy to be given to his wife, and that her name was omitted by mistake of the scrivener. 1 Cond. Ecc. [3 Phillim. Ecc.] 444, 455. Here the will pointed out the ambiguity, and on its face necessarily referred to an explanation of the intention as to the meaning of the word "her," it was a case of an ambiguity helped by the reference in the will itself. So, where the executed will was. "I give £60,000 in legacies," which were enumerated to the amount of 51,000. it then gave

"the residue 4.000"—making only 55,000, the draft of the will in testator's handwriting, at the bottom of which he had inserted the date of the will and the names of the witnesses, was admitted to show the mistaken omission. 2 Cond. Ecc. [3 Addams, Ecc.] 509, 512.

Here the mistake appeared on the face of the will, and was helped by reference. So where the 20th sheet of a will was missing, and it appeared from the 19th and 21st pages, that the missing sheet was necessary to connect them as a component part of the will, that its omission was unintentional, and that it had been detached by accident—it was supplied by proof of instructions and other evidence. 2 Cond. Ecc. [3 Addams, Ecc.] 506; 21 C. L. 294, S. C. So where a paper was executed in 1802, declared to be a codicil to the will of 1798, which had been destroyed, and a new one executed in 1800, these facts were admitted to show, that the testator intended to refer to the existing will of 1800, and had, by mistake, referred to the cancelled one of 1798. 1 Cond. Ecc. [3 Phillim. Ecc.] 445, 452. So where a will was endorsed "plan of a will," and so headed, but was otherwise perfect and complete, evidence was admitted to show whether it was intended to be a will, or was only authenticated as instructions (1 Cond. Ecc. [3 Phillim. Ecc.] 452), being consistent with the words of the will. So where a deed in trust for A. and B. was indefinite as to the parts they should take, a deed from the trustee defining their shares and other evidence was admitted to show that it was according to the intention of the parties who intended that both instruments should operate as one deed (17 Serg. & R. 110), both being executed at the same time.

In this respect there is no distinction between devises of real and personal property. In a leading case, the testator devised his estate to his executors, one of whom owed him by bond £3,000; evidence was offered to show that he instructed the scrivener in writing to give the money to the executor, but he refused to insert it in the will, insisting that making him executor would release the debt; that the testator took counsel on it, who gave the same opinion, in confidence of which, the testator executed the will without the devise. The evidence was not received, and the debtor executor was decreed to pay his co-executor one-half of the bond. Talb. 240, 241. On an appeal to the house of lords, they refused to hear the evidence read, and affirmed the decree. 4 Brown, Parl. Cas. 180, 184. The authority of this case remains unquestioned, and it has been expressly adopted in this state. 2 Yeates, 304; 7 Serg. & R. 114; 1 Johns. Cas. 235. It matters not how clear and full the instructions may be, or that they are signed by the testator, and in the body of them declared to be a will, if the executed will contains no reference to them, and is on its face clear of ambiguity as to the subject matter. 3 Cond. Ecc. [1 Hagg. Ecc.] 290; 4 Cond. Ecc. [2 Hagg. Ecc.] 209; 2 Ves. & B. 318; 6 Conn. 276; 4 Dessaus. Eq. 215.

Instructions to a scrivener cannot be given in evidence. 2 Vern. 98. He cannot be allowed to prove that he used a word with a meaning different from its import of the true meaning of which he was ignorant. 7 Serg. & R. 113, 114. A mistake in drafting a will does not make it void. 8 Conn. 265. And when a testator declares a paper to be his will, the court must take it as it is written. 1 Cond. Ecc. [3 Phillim. Ecc.] 452, 455; 6 Conn. 274, 275. Mistakes are not to be supposed, if any construction that is agreeable to reason can be found out—the will that is in writing must pass the land, and must be decided by what is contained in it. 1 Atk. 415.

The written declarations of a testator made after the will are not evidence (5 Bing. 435; 15 C. L. 490; 8 Conn. 264), unless the paper may be proved as a codicillary (1 Cond. Ecc. [2 Phillim Ecc.] 267, 270), or a testamentary one (6 Ves. 397; 4 Dowl. 89). A paper may be a will as to personal, though not as to real property, here and in England; the statute of wills of 34 & 35 Hen. VIII. requires only that wills should be in writing, and the statute of frauds and perjuries requires subscribing witnesses only to wills devising real estate. Instructions may be read to prove that testator knew he had particular relations, but no farther to prove what he meant by the words "poor relations." 1 Ves. Sr. 231, 232. On a question whether the devise to the wife was in lieu of dower, a rough draft of the will in testator's handwriting, containing the devise and the words "in lieu of dower," which were omitted by the mistake of the scrivener, was not admitted. 2 Yeates, 304.

The rule deducible from these cases is, that instructions are in no case admissible to control or contradict the plain words of a will, or to supply an omission, unless there is something on the face of the executed will, which shows a mistake or omission by pointing or referring to something which the instructions will explain. When there is such a reference, whether the ambiguity is latent or patent, it may be removed by the instructions or other matter referred to or pointed out, the thing referred to being considered as connected with the will by the reference, so as to bring the case within the rule, "Id certum est quod certum reddi potest." But when the will is ambiguous in its words, and contains no reference to any thing which can make it certain, or on its face admits of no construction, it is void. 1 I. C. 235, 256, 286; 3 Atk. 258; 3 Serg. & R. 607; 7 Serg. & R. 114; 8 Coke, 155. As to parol or extrinsic evidence the rules are well settled.

It is not admissible to fill up a blank (2 Atk. 239; 3 Brown, Ch. 311, 313; 21 C. L. 291, 293), or the omission of a devisee (3 Atk. 257); nor to supply the written words of a will; it must be construed ex visceribus suis (1 Yeates, 432; 2 Yeates, 304); nor to explain it unless it refers to something dehors of so ambiguous a nature as to require explanation, not of a doubt in the will, but a doubt on a matter out of the will (7 Serg. & R. 113, 114; 1 I. C.

234); not in its construction, but its factum (3 Cond. Ecc. [1 Hagg. Ecc.] 290; 4 Cond. Ecc. [2 Hagg. Ecc.] 209; 21 C. L. 291). When there is no description of the devisee or thing devised, it is not admissible, nor where the thing devised, is well described or defined in terms or by reference, in order to embrace what is not so described. As a devise of "my money," evidence will not be admitted to show that the testator intended to give bonds, notes, and mortgages. 1 I. C. 231, 234; 14 I. R. 9, 14. So of a devise of my farm in the occupation of A., an averment that he intended to pass land in the occupation of B. cannot be admitted. 11 Johns. 212, 220; 14 C. L. 291; Godb. 16.

If the devise has a certain effect and operation to pass lands at the place described, it shall not be extended by extrinsic evidence to embrace lands elsewhere, unless the intention can be collected from the will itself. 21 C. L. 290. A new description cannot be introduced into the body of the will, and no estate can pass that does not answer the description it contains, nor can evidence be received which amounts to a new devise, which the testator is supposed to have omitted, or to add words which he has not used (21 C. L. 291; 3 Durn. & E. [Term R.] 87); or where the will is silent, to apply it to a new subject matter of devise or new devisee, as to prove that the word "Gloucester" was omitted by mistake, so as to make the lands in that county pass by the will, though not referred to (21 C. L. 292, 294; Newberg v. Newburgh, in Dom. Proc. cited), but is admissible where a description of the subject matter is imperfect. So of the devisee, or where the description is true in part, but not in every part, if there is a sufficient indication on the face of the will to justify the application of the evidence. 21 C. L. 294.

If there is in any part of the will a sufficient description, it shall not be vitiated by any mistaken description or circumstance for "utile per inutile non vitiatur." 7 I. R. 217; 1 Maule & S. 301; Vide Bac. Law Tracts, 102 et seq., Reg. 25. Or if it can be collected from the words of the will, that the description of two estates has been transposed by mistake—the local description may be rejected as surplusage for "falsa demonstratio non nocet," where enough appears after the false description is rejected. 21 C. L. 291, 294. "An averment to take away surplusage is good, but not to increase that which is defective in the will of the testator. Godb. 131; Hob. 32. In deciding on the admission of evidence, and the construction of wills, the court will look to the situation of the testator's family when it was made (3 Dowl. 68; 2 Ves. Sr. 217; 1 Wash. Va. 55, 56), and of the property he owned, in order to ascertain to whom he intended to give it, and what he intended to give by construing the words consistently with the state of his property and family, but not to introduce new words into the will (21 C. L. 288, 294). Or to strike out those it contains; as a devise of "all my lands in the parish of C. called Hoplands, to my son J. If he dies without issue, Hoplands shall remain to B." Hoplands was an entire farm, extending into two parishes, but that part only passed which was in C. Cro. Jac. 22, 23. So a devise of "my lands of Ashton, or at Ashton" (which mean the same thing), other lands not situate there, will not pass by any evidence aliunde. Dowl. 65, 87, 91. The same rule was adopted on a devise of "his freehold and real estates, in the city of Limerick, and county of Limerick." The testator had a small estate in the city, but none in the county of L., but had estates in the county of Clare; yet evidence of his intention was not admissible to show that he intended to give the estates in the county of C. 21 C. L. 28, 29; 8 Bing. 244.

"The court cannot do for a testator what he has not done for himself" (Peisch v. Dickson [Case No. 10,911]); "or make a will for him while he sleeps in his grave" (6 Conn. 174); and they cannot receive evidence of his declarations before or after the making of the will (2 Vern. 98; 8 Conn. 264; Stevens v. Vancleve [Case No. 13,412]; 4 Dessaus. Eq. 215, etc.; 4 Gall. 172; Gilpins v. Consequa [Case No. 5,452]; [Hunt v. Rousmanier] 8 Wheat. [21 U. S.] 211). Courts of law have always been jealous of admitting extrinsic evidence to explain the intention of the testator, and it is admitted only where an ambiguity is introduced by extrinsic circumstances (4 Dowl. 93); or in that class of intermediate cases, referred to by Lord Bacon and Judge Story, which partake both of the character of latent and patent ambiguity; as where the words are clear, but admit of two constructions, consistently with the meaning (Bac. Law Tracts, 100; Peisch v. Dickson [supra]; [Mechanics' Bank v. Bank of Columbia] 5 Wheat. [18 U. S.] 336, 337; S. P., 2 Ves. Sr. 217). The admission of the evidence in such cases, is to give effect to the will by removing the ambiguity (4 Dowl. 93), and is of such a nature as stands well with the words of the will (8 Coke, 155a).

It is admitted where there are two persons of the same name, to show which was intended (2 Atk. 373, 375, 686; [Powell v. Biddle] 2 Dall. [2 U. S.] 70, 72; 8 Coke, 155; 1 Wash. Va. 55); where there is a mistake in the Christian or sur name of the devisee (2 Ves. Sr. 218; 2 Atk. 373; Godb. 17; Co. Litt. 3a); if there is a certainty of the person meant (Swab. 480); in cases of resulting trusts (2 Atk. 373; 1 Vern. 31, note); or where the testator used to call James, "Jackey," and gave a legacy to "John" (Amb. 175; [Powell v. Biddle] 2 Dall. [2 U. S.] 70; 1 Ves. Sr. 231). So where he had a niece named "Gertrude Yardley," whom he used to call "Gatty," and often declared he would do well for her; she took a legacy given to "Catherine Evanley," there being no such person as C. E. 2 P. Wms. 141, 143. If the testator errs in the name, and not in the person, the devise is not hurt by the error. Swinb. Wills, 480, 18.

If a devise is made to the Church, it shall go to the parish church of the testator; or, if

he names a church, and there are divers of the same name, it shall go to the one where he usually resorted: so if to "the poor," it shall go to the poor of his parish (Swinb. Wills, 489); or if he was a refugee, the devises to the poor generally, it shall be intended to mean poor refugees of the same nation with himself (Amb. 422; 2 Rop. Leg. 147); or to the charity school, and if there were two in the place, the legacy went to the one of the children of which testator was fond, and to whom he had declared he would leave something at his death (1 P. Wms. 674, 675).

The court will look to the situation and circumstances of the testator, to ascertain his intention (2 Eq. Cas. Abr. 366; 2 Ves. Sr. 213); the use to which the thing devised had been applied (3 P. Wms. 145); and the association of the testator with one of the persons of the same name, to whom he had given a legacy ([Powell v. Biddle] 2 Dall. [2 U. S.] 70, 72; 2 Vern. 593; 1 Vern. 31). On the same principle, the court will look to the testator's property, in order to ascertain what he intended to devise. 1 Wash. (Va.) 55, etc. As where he had no real estate of his own, but had a power of appointment over real estate, and devised "all his real estate," it will pass the latter; otherwise the will would be inoperative. Hob. 160, 166, 176; 3 Serg. & R. 111, 115; 1 Rawle, 249; Seaton v. Kuhen, 2 Ves. Jr. 589; 21 C. L. 292. So where one devised all his freehold houses in a street, but had no freehold houses there, though he had leasehold houses there, the latter passed by the will. 1 P. Wms. 286; 21 C. L. 292; 2 Leon. 153; 3 P. Wms. 386.

It is sufficient if the devise shows the intention of the testator in substance, though it is defective in circumstances, or they fail. Hob. 32. As a devise of "my T. farm in the occupation of A.," it appeared that only part was in his occupation; yet as the T. farm was a sufficient description, the whole passed. 1 Maule & S. 301. So where he owned a house in 4th street, occupied by A., and devised "his house in 3d street, occupied by A.," the house in 4th street passed. Allen v. Lyons [Case No. 227].

For these purposes extrinsic evidence is admissible to correct mistakes or remove ambiguities, by referring to the facts and circumstances on which the will is predicated, to apply the words and written intention of the testator to the devisee and thing devised, and thus to effectuate the declared objects of the testator consistently with his will. But when the evidence offered does not remove the doubt completely, then it is inadmissible (3 Cond. Ecc. [1 Hagg. Ecc.] 290; 4 Cond. Ecc. [2 Hagg. Ecc.] 209); for if admitting its truth, there is a doubt on the words of the will; it is void, for uncertainty by the judgment of the law, and no averment dehors can make that good which, upon consideration of the deed, is apparent to be void. If the averment which is out of the will stands well with its words

it shall be tried by the country, if otherwise it is matter of law. 8 Coke, 155a.

On a subject which has so often arisen in courts of law and equity as this has, there is a multitude of cases in which general principles have been settled or recognised from the passage of the statutes of wills that have never been departed from; we have noticed a sufficient number of the leading ones, to enable us to come to a conclusion entirely satisfactory in their application to this case. Here is a perfect will, duly and fully proved, which wholly omits any disposition of the land in question; there is no ambiguity on its face which can make it void; the revoking clause is absolute, unqualified, and without exception; we can therefore establish no other paper or part of a paper as the will of the testator, without directly expunging the clause of revocation. There is no latent ambiguity which arises from the application of the words of the will to the subject-matter of the devise, or the person to whom it is devised. The evidence relied on does not "stand well with the words of the will"; it is wholly extrinsic and dehors the will, which as to the remainder of the estate in the homestead, contains neither a devisor, a devisee, or any thing devised. To make out the existence of either, we must introduce into the body of the will, a clause from the instructions to which no reference is made, which cannot be connected with it by any construction, but is a new subject matter of devise wholly foreign from the will. This is a fatal objection to the title of the defendant, which cannot be removed by the court without overruling the best established rules and principles of law in the construction of the statutes of wills in England, adopted in this country in their application to our own acts of assembly. Vide 1 Rawle, 120, 121.

If in the adjudged cases, we had found any judicial precedent to authorize us to add this clause to the executed will, we should have felt at liberty to have followed it, as it would have accorded with what we are satisfied was the actual intention of the testator, as proved by the witnesses to the instructions or rough draft, as well as the general understanding of the family, appearing by their assent to the decree of the register's court, and their petition to the legislature to supply the omission, to insert the devise in the will. But in every view which we can take of the case, there are difficulties which cannot be overcome. There is not a particle of evidence to justify us in striking out the revoking clause of the executed will; it must remain as an operative clause, and while it remains we can adjudge no other paper to be his will; if, however, this objection to the defendant's title could be removed the others are insuperable. The evidence removes no doubt or ambiguity which existed without it; the only defect which it could cure is, the want of a clause devising the homestead; but as the will is wholly

silent on this subject, the effect of the evidence is to make a new devise, not to explain a doubtful phrase or word in the will. 1 Rawle, 120, 121. This would be more than filling a blank by extrinsic averments, for it would be to supply the three indispensable requisites of a will, by collateral proof out of the will, when the law directs that they shall appear in writing in the body of the will.

That which is executed contains no disposition which affects the case; there is no devisor, devisee, or thing devised, without declaring the law to be, that instructions or the rough draft of a will are not superseded by a perfect executed instrument, and that the latter shall not be referred to a change of intention when they differ, but shall be controlled by the former. Admitting that the omission to transfer the devise from the draft, to the will, was a mistake in the scrivener, or of the testator, it is a case which has often occurred and been repeatedly decided to be incurable, unless there is some allegation of fraud or imposition practiced on the testator, neither of which is alleged in this case. The consequences of an omission to make a will at all, or to dispose of any particular part of a man's estate, is not to authorise a court and jury to make such an one as they may think he intended to make, but omitted to do it by mistake; that would be a repeal of the statute of wills, and introducing the very evils against which they were intended to guard, produce most utter confusion in titles depending on dispositions of property which were to operate after the death of the owner. There may be cases of hardship growing out of the application of the law to special cases of individuals; they however are of trifling consideration when contrasted with the general mischiefs which would pervade society if there was no certainty in the law.

If men intend to dispose of their property by will in a particular way, and do not do it in the manner pointed out by law, they die intestate: the fault is not in the law, it is in the testator; the hardship which it may cause to the intended object of his bounty, is not visitable on the administrators of the law who must act within the line defined by the legislature. If the law is unjust, it must be amended by the legislative department of the government. You and we have only to ascertain what the law is; they must declare what it ought to be. In the decision of causes we have our appropriate duties: it is yours to declare what facts are proved by the evidence before you: it is ours to declare what the law is upon the evidence offered or the facts found. In this case, there is no question of fact; the truth of all the evidence is admitted: it is upon paper showing for itself; it admits of no doubt. You can find nothing more than that Edward Brinton intended to devise his homestead to James; that he put that intention into writing, by instructions or rough draft, and intended to insert it in the will, but that by mistake, or some other cause, it was not done. Yet you cannot find that he did not make the executed will; that he did not revoke all former wills, or that the last one contains every clause which disposes of the remainder to James, or shows any mistake in its body. The facts which you can find are out of the will; they cannot be introduced into it by any power save that of the testator; they cannot be deemed a new will as they existed before the execution of the authenticated one; they cannot amount to a will by themselves, because the paper is revoked, nor be connected with the existing will, which contains not the least reference to the matter. The law therefore adjudges the evidence to be entirely insufficient to establish as the will of Edward Brinton, any other paper than the one he executed.

The counsel of the defendant has endeavored to take this case out of the general rules of law, by the force of the introductory clause, "as to what worldly estate God has been pleased to bless me with I give and dispose of in the following manner," which he considers as indicating an intention to dispose of his whole estate by that will, and that the omission to do it is an ambiguity which can be explained and cured by averment of extrinsic matter. There is no authority for giving such operation to this clause as to let in evidence of a devise not referred to in the will; the law is well settled that an introductory clause will not, by its own force, enlarge an estate given in the body of the will, nor for such purpose be attached to a subsequent devising clause, so as to give it a wider range. 1 Rawle, 415. The most that can be said is that, where the words of the devise admit of passing a greater interest than for life, courts will lay hold of the introductory clause, to assist them in ascertaining the intention. [Wright v. Denn] 10 Wheat. [23 U. S.] 228, 229; Page v. Wright [Case No. 10,669]. It is carried down to the devising clause, in order to show the intention, but will not of itself give a fee. 8 Serg. & R. 289. Nor carry an estate that is clearly omitted; but if it be dubious whether it be omitted or not, it will help the interpretation. [Busby v. Busby] 1 Dall. [1 U. S.] 226. Vide 1 Rawle, 415.

In this case, there is no devising clause to which the introductory words can be carried; if we give them any effect, it will be to make them the will itself, by republishing and establishing a revoked paper; this would be to overrule all authority, and to reverse every settled principle which governs the construction of wills. A clause which cannot connect a devise for life with one in fee, cannot by its own force create a fee where no devise is made. Besides, if we consider it evidence of the intention of the testator to dispose of his whole estate, it will not answer the purposes of the defendant; for the declared intention is to dispose of it by that will, and not a former one; it contains no reference to any other paper,

and declares that he disposes of his estate in the following manner,—that is, as the will directs and none other. The utmost meaning, therefore, of which it is susceptible, is to show that as to the land in question, he had not fully executed his first intention declared in the beginning of the will; in other words, he has not devised the fee simple, and has left it to be distributed according to law.

It is, lastly, contended that connecting the other evidence with the executed will, such a case is presented as will authorize the court to make it conform to the evident intention of the testator. As a court of law, we have no power to reform any instruments; we must decide upon them according to their legal construction, effect, and operation, apparent on their face, or with the aid of such evidence as is admissible by the rules of law to explain them. Courts of equity will reform instruments made to carry into effect the contracts and agreements of parties according to their original intention, the agreement being the standard of right and equity between the parties, will be carried into effect, notwithstanding any defect in the instrument adopted as its execution. Yet where an instrument has been deliberately executed by the parties, under a mistaken opinion, of both as to its legal effect, a court of equity will not reform it, though it fails to effectuate their intention [Hunt v. Rhodes] 1 Pet. [26 U. S.] 17. But there is no analogy between these and cases of wills; there is no antecedent or existing standard by which to reform the instrument made to carry into effect the final and last will of a testator. Unlike a contract or agreement which requires the meeting of two minds to give it efficacy, a will is the written declaration of the party, proved by two witnesses, to be a testamentary disposition of the testator's property. It then becomes its own standard; the only evidence of the will and volition of the testator which a court of law or equity can notice. The intention must be found in its body, and when once ascertained, cannot be altered by any other power than that which formed and expressed it in writing.

In cases of contracts, courts of equity act upon the conscience of a party, by compelling him to execute it in good faith, according to the intention with which it is made; but they do not assume the power of altering or reforming original agreements differently from the intention of the parties; the extent of their power is to correct any instrument, reducing it to writing, or executed to carry it into effect contrary to the true meaning and intention of the contracting parties.

In cases on wills. the executed declaration of intention made according to the forms and solemnities enjoined by law is the standard of right by all the rules of law as well as equity, between the heir at law and the devisee, which no court can alter, modify, construe, or reform, on any other evidence of intention, than can be collected from its words, as the testator has made and declared it. So.

all courts and juries are bound to take and respect it as his last will and testament, revoking all others, and passing only such estate as it professes to dispose of, or such as by construction can be brought within its provisions. We must take this will as we find it, and, notwithstanding any evidence which has been received, feel bound to declare that it does not devise the property in question to the defendant. The consequence is, that your verdict ought to be for the plaintiff, for the seven undivided ninth parts.